## CIRCUIT COURT OF FREDERICK COUNTY

H. H. Harris, State Highway
Commissioner

v.

Cloverdale Farm, Inc.

1963

Case No. 2209

By JUDGE ELLIOTT MARSHALL

Prior to or during the pendency of this condemnation proceeding, pursuant to Code Section 33-703 the Commissioner filed with the Court a certificate for the sum estimated to be the fair value of the land to be acquired plus damages.

The Commissioners reported their award in an amount greater than that of the Certificate.

After the Commissioner's report was filed the respondent filed his petition under Section 33-70.6 praying that he be paid the amount of the Certificate.

Thereafter, pursuant to Section 33-70.10, the Commissioner paid into court *the amount of the excess of the award over this amount of the certificate,* plus 5% *interest accrued from the date of the filing of the certificate until the date of the filing of the award.* (I gathered from the argument that the Commissioner paid into Court the full amount of the award. If he did his act would be wholly ineffectual because unauthorized by the statute.)

*Question*: Has the right of the respondent to payment of the amount of the Certificate expired?

Chapter 581, Acts 1958, is entitled:

*AN ACT* to amend the Code of Virginia by adding sections numbered 33-70.1 through 33-70.11, thereto providing for the *taking of possession and title* to certain property by the State Highway Commission *before and during* condemnation; and to *repeal sections 33-70 and 33-74* of the Code relative to the same subject matter. (Italics Supplied.)

The Act, of course, must be viewed in its entire contents to determine the legislative intent as to the answer to our question. However, a brief review of the history of the legislative efforts preceding the present statutes may prove helpful in ascertaining the present purpose.

Prior to 1940 the State Highway Commissioner apparently had no power to take possession of land for highway purposes prior to eminent domain proceedings. For the obvious purpose of preventing the costly delay, (sometimes for years) entailed in proceedings which might find their way into the Court of Appeals, the Legislature in 1940 enacted a new eminent domain statute for the Highway Commissioner. Acts 1940, Chapter 380. Portions of this Chapter were codified under Sections 1969(j)(4) and (6), Code 1942, whereunder the Commissioner was authorized to enter upon the land and proceed with the construction of the highway prior to condemnation, but only after he had paid to the landowner or into Court his estimated value of land and damages. In lieu of the payment into Court he could issue and file a certificate just as provided in the present Section 33-70.3. The Commissioner, as now, was not required to initiate condemnation proceedings until sixty days after the road construction was completed.

This left the landowner in a wretched state. The state could enter his land (though it did not acquire title) without any formality other than the issuance and filing of a certificate that it had a sum of money to pay him which was "estimated" to be adequate compensation

for his loss. There could be a long interval, perhaps years, during which he was not only deprived of his land but the use of the money to compensate him. He was not entitled to interest until the Commissioners filed their report of award. Obviously the payment into Court or the issuance of the certificate was of no benefit to the landowner. It was to all intents and purposes an idle gesture to have the Commissioner issue a certificate that the money was available, unless it was to serve as an inducement to the landowner to accept the offer rather than to litigate.

The 1958 act is plainly designated to ameliorate this said dilemma of the landowner.

Section 33-70.1 authorizes the Commissioner "to acquire title" by issuing the certificate and entering the land. Section 33-70.4 provides that upon recordation of the Certificate the intent or estate of the owner shall terminate and title shall "vest" in the Commonwealth, "and such owner shall have such interest or estate in the funds held on deposit by virtue of the certificate as he held in the property . . ." While the statute expressly provides that the Commonwealth's title "shall be defeasible" until the parties agree as to the price or the condemnation award is made, it does not attempt to enumerate the subsequent eventualities which might serve to defeat the title. In the absence of fraud, mistake, coercion or the like, which could only serve to invalidate the original title acquired and not to defeat it one can only conjecture as to the subsequent conditions which might serve to defeat the title. Surely no flaw or error in the condemnation proceedings themselves would so serve, because the taking of possession and the issuance and filing of the certificate perfect the title in the Commonwealth. Errors in the condemnation proceeding may be corrected, and, if necessary, new proceedings instituted until perfection is attained. It should be noted that a bona fide offer to purchase is not a prerequisite to the acquisition of title under these sections, as in filing petition for condemnation. Although it might be determined that later condemnation proceedings were invalid because of omission of bona fide attempt to purchase, the title would not be defeated, although new condemnation proceedings might be necessary.

To me, it appears reasonably safe to say that to all practical intents and purposes, upon compliance with Sections 33-70.1, 33-70.3 and 33-70.4 the Commonwealth owns the land and the landowner owns the money represented by the certificate. It is true that Section 33-70.9 provides that the "final order" confirming the Commissioner's award shall "confirm absolute and *indefeasible* title," but the possibilities of defeasance upon condition subsequent appear to be so remote as to be negligible. If the Commissioner enters and constructs a highway there will be few cases where the title is later defeated.

If the Commonwealth's title to the land cannot be defeated except upon the arising of subsequent conditions which are so difficult to envision, surely only such conditions could serve to defeat the landowner's ownership of the money represented by the certificate. It seems only fair to divine that the legislation intended an equality of rights. So long as the Commonwealth owns the land the landowner owns the money.

Section 33-70.7 gives the Court the power to permit amendments to the certificate to correct errors, but until or unless this be done the landowners still own the money.

Section 33-70.6 plainly anticipates that acceptance of the amount of the certificate will in no way hamper the landowner in the condemnation litigation including his appeal.

There is no statutory limit as to the time when the landowner may apply for the money which, as we have seen, *he owns*, certainly until title in the Commonwealth has been defeated.

There seems to be no reason to say that the filing of the report of award of the Commissioners in an amount in excess of the certificate would serve to supplant the latter and thus to defeat it, leaving the title to the land still in the Commonwealth. In fact, as we have observed, under Section 33-70.10 the amount of the certificate is not paid into the Court; only *the excess* of the award. The distribution under Section 33-67.2 would entail the payment by the State Treasurer of the amount of the Certificate plus the payment by the Clerk of the excess. Therefore, the conclusion seems inescapable that even after the excess is paid into Court the landowner must petition for the

payment of *his money* represented by the Certificate under the provisions of Section 33-70.3.

In the event that the award should be less than the amount of the certificate, if the landowner had not already acquired the money, it would be a simple thing for the Court to correct the certificate under Section 33-70.7 [and] direct that the correct amount be paid by the State Treasurer. In the event that the landowner had already acquired the money the Certificate would be corrected and judgment rendered to the amount of excess paid.

In the instant case the landowner proposes to appeal the final judgment and desires now to acquire the money represented by the Certificate. The Commissioner contends that he should not have his cake and eat it too. He should be required either to accept the certificate and award or to prosecute his appeal. As we have seen, the legislature plainly intended that he should have the money as soon as the state took his land, for the very reason of the delay during the condemnation proceeding including the appeal. Suppose the situation were reversed. The Commissioner decided not to pay the excess into Court and to appeal the final judgment. Could it be said that the legislature intended that the filing of the Commissioner's report of award would deprive the owner of his right to the amount of the certificate?

In my opinion the legislature intended the right to the money represented by the certificate to correspond to the *vested* title of the Commonwealth in the land, subject to be defeated only upon such conditions that might defeat such title to the land. The amount of the money represented by the certificate might later be diminished because of mistake or an award for a lesser amount, but these possible eventualities do not impel a construction of the statute to the effect that there shall be any extinction of the right prior to the time of the payment of the amount of the certificate into the hands of those possessing interests in the land.